UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

DOMINIQUE CASTILE,

Plaintiff,

v.

COUNTY OF NIAGARA, *et al*.,

Defendants.

---

**REPORT AND RECOMMENDATION**

Case No. 1:25-cv-655-JLS-JJM

Plaintiff Dominque Castile alleges that defendants were deliberately indifferent to his serious medical condition in violation of the Fourteenth Amendment while he was a pretrial detainee at the Niagara County Jail, and seeks recovery for that violation pursuant to 42 U.S.C. §1983. Amended Complaint [22].[1]

Before the court are motions by defendants County of Niagara, Sheriff Michael J. Filicetti, Leanne Giaccotto, R.N., Lindsay Getz, R.N., Rene Marriott, RN, Michael Gandt, P.A., PrimeCare Medical of New York, Inc., and PrimeCare Medical, Inc. (collectively the "County defendants") and defendant Umbrine Fatima, M.D. to dismiss the Amended Complaint pursuant to Fed R. Civ. P. ("Rule") 12(b)(6) for failure to state a plausible claim [27, 30].

The motions have been referred to me by District Judge John L. Sinatra, Jr. for initial consideration [6, 18]. Having reviewed the parties' submissions [27, 29, 30, 34-37] and heard oral argument on July 31, 2025 [38], for the following reasons I recommend that the

---

[1] Bracketed references are to CM/ECF docket entries, and page references are to CM/ECF pagination.

County defendants' motion be granted in part and denied in part, and that defendant Fatima's motion be granted.

## BACKGROUND

Castile alleges that following surgery for a ruptured Achilles tendon on June 21, 2024, "beginning on June 24, 2024, [he] developed life-threatening thromboembolic complications while he was incarcerated at the Niagara County Jail"; that "on or around June 24, 2024, he began complaining of severe lower extremity pain and swelling"; that "[o]n June 24, 2024, despite [his] complaints about soreness of his right leg, Defendant Gandt did not educate [him] on the risk of DVT [deep vein thrombosis], nor order any objective tests nor consult with a supervisor"; that "[f]rom June 24 through July 4, [he] complained of pain, swelling, and difficulty breathing to defendants Leanne Giaccotto, R.N., Lindsay Getz, R.N. and Rene Marriott, R.N.", but that "none of them documented his complaints in his chart, nor consulted with their supervisors regarding [his] ongoing and severe lower extremity pain, swelling, and difficulty with breathing". Amended Complaint [22], ¶¶2, 30, 34, 35.

He further alleges that "despite his complaints and symptoms, and the high risk of death associated with DVT and fatal PE [pulmonary embolism], a medical doctor or professional did not assess [him] until July 4, 2024, when he was seen by Defendant Umbrine [Fatima]", who diagnosed him "with DVT with possible PE and recommended transfer to the emergency department", but that "despite the known risk of death, the defendants waited a full day before [he] was transferred to ECMC [(Erie County Medical Center]". Id., ¶¶37-38.

He "was hospitalized at ECMC from July 5 to July 19, 2024, for treatment of confirmed . . . PE and . . . DVT", and alleges that defendants "breached the standard of care by

failing to properly evaluate Mr. Castile's lower extremity pain and swelling, thus resulting in delayed diagnosis of a deep vein thrombosis, delayed initiation of anticoagulation, and development of bilateral pulmonary embolism. The defendants also breached the standard of care by failing to evaluate Mr. Castile for DVT sooner. Earlier evaluation would have discovered the DVT and initiation of anticoagulation at that time would have likely prevented the development of the PE". Id., ¶¶39, 42.

Castile alleges three causes of action. Count I alleges that the individual medical defendants "exhibited deliberate indifference to [his] serious medical needs and a substantial risk of serious harm, including premature, preventable death" in violation of the Fourteenth Amendment, causing him "to develop life-threatening thromboembolic complications . . . unnecessary pain and suffering and long-term health consequences, and placing him at risk of death". Id., ¶¶50-51.

Count II alleges that "[d]efendants Niagara County and/or Sheriff Filicetti and PrimeCare have, with deliberate indifference, failed to establish policies, practices, and procedures and/or have failed to properly train, supervise, and discipline their employees regarding the provision of adequate medical care to incarcerated people with serious medical needs", and that "[t]he violations of Mr. Castile's constitutional rights under the Fourteenth Amendment . . . his damages, and the conduct of the individual defendants were directly and proximately caused by the actions and/or inactions of Niagara County and/or Sheriff Filicetti and PrimeCare". Id., ¶¶55-56.

Count III asserts a Monell claim[2] against defendants Niagara County, Sheriff Filicetti and Primecare, alleging that they "established, condoned, ratified, and/or encouraged

---

[2] Monell v. Department of Social Services, 436 U.S. 658 (1978).

customs, policies, patterns, and practices that directly and proximately caused the deprivation of the civil and constitutional rights of . . . Castile", that the "failure by defendants to supervise, train, or discipline personnel was so obvious that the failure to do so amounted to a policy of deliberate indifference", and that "[s]uch acts . . . were the proximate cause of injury and damage, and the damages and injuries described herein". Id., ¶¶56, 58-59.

In moving to dismiss the Amended Comlpaint, defendants argue that Castile has not plausibly alleged a Fourteenth Amendment violation or their involvement therein, and that Sheriff Filicetti is entitled to qualified immunity. *See* defendants' Memoranda of Law [27-2, 30-2, 36, 37].

**DISCUSSION**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face . . . . Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged . . . . The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679.

To plausibly "allege a claim of deliberate indifference to [his] medical condition in violation of the Fourteenth Amendment . . . a plaintiff must plead facts showing that [he] had a

serious medical condition and that it was met with deliberate indifference." Bruno v. City of Schenectady, 727 F. App'x 717, 720 (2d Cir. 2018). "The first element requires a condition of urgency, one that may produce death, degeneration, or extreme pain." Id. "In determining whether a medical need is sufficiently serious to be cognizable as a basis for a constitutional claim for deprivation of medical care, we consider factors such as whether a reasonable doctor or patient would find the injury important and worthy of treatment, whether the medical condition significantly affects an individual's daily activities, and whether the illness or injury inflicts chronic and substantial pain." Charles v. Orange County, 925 F.3d 73, 86 (2d Cir. 2019).

The County defendants argue that Castile "does not allege facts showing that any Medical Defendant was confronted with an objectively serious medical need requiring immediate intervention". Memorandum of Law [27-2] at 18. I disagree. For example, although they argue that he failed to allege that he "presented with respiratory distress" (id.), the Amended Complaint alleges that "[f]rom June 24 through July 4, [he] complained of pain, swelling, *and difficulty breathing* to defendants Leanne Giaccotto, R.N., Lindsay Getz, R.N. and Rene Marriott, R.N. However, none of them documented his complaints in his chart, nor consulted with their supervisors regarding Mr. Castile's ongoing and severe lower extremity pain, swelling, and difficulty with breathing". [22], ¶35 (emphasis added).

"In most cases, the actual medical consequences that flow from the denial of care are highly relevant in determining whether the denial of treatment subjected the detainee to a significant risk of serious harm." Charles, 925 F.3d at 86. Here, the Amended Complaint alleges that "[e]arlier evaluation would have discovered the DVT and initiation of anticoagulation at that time would have likely prevented the development of the PE" ([22], ¶¶39, 42) - clearly serious consequences.

"The second element . . . that the defendants were deliberately indifferent, has . . . evolved over time". Bruno, 727 F. App'x at 720. Courts now apply "an objective standard, *i.e.*, whether a reasonable person would appreciate the risk to which the detainee was subjected . . . . [A]n official does not act in a deliberately indifferent manner toward an arrestee unless the official acted *intentionally* to impose the alleged condition, *or recklessly* failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official *knew, or should have known*, that the condition posed an excessive risk to health or safety." Id. (emphasis in original).

The County defendants argue that "[t]he only allegations as to Nurses Giaccotto, Getz and Marriott are in the form of impermissible generalized group pleading". Memorandum of Law [27-2] at 8. I disagree: the Amended Complaint does not allege that Castile complained to them "in general" - instead, it alleges that he complained to *each* of them, and that "*none* of them documented his complaints in his chart, nor consulted with their supervisors regarding [his] ongoing and severe lower extremity pain, swelling, and difficulty with breathing". [22], ¶35 (emphasis added). It further alleges that "[a]ny competent medical professional would be aware that the standard of care dictates that a patient presenting severe lower extremity pain and swelling following an achilles rupture should be transported to an emergency room for objective testing". Id., ¶33, citing a medical article.

The County defendants further argue that "[m]edical records . . . show that on June 24, 2024, PA Gandt in fact referred Plaintiff to Erie County Medical Center for specialized treatment. This is the opposite of deliberate indifference and . . . establishes timely and responsive care". County defendants' Memorandum of Law [27-2] at 16-17. However, the record which they cite (id. at 17) is not attached to the Amended Complaint - instead, it is

submitted by defense counsel ([29, 29-1]] without proper authentication. "[U]nless medical records are authenticated via a trial witness or have proper certification, the records are not admissible." Checo v. Damian Family Care Center, Inc., 2026 WL 948244, at *2 (E.D.N.Y. 2026). In any event, the record suggests only that Gandt recommended "f/u with ortho in 10-14 days" ([27-2] at 17) - hardly the "timely and responsive care" that defendants suggest. Therefore, I conclude that the Amended Complaint's allegations against defendants Giaccotto, Getz, Marriott and Gandt are plausible.

However, I take a different view with respect to Castile's remaining claims. Although he argues that "Dr. Fatima delayed care for a 13-day period, and then even with the referral, further delayed the transport to the emergency room by a day" (Memorandum of Law [34] at 7), what the Amended Complaint *actually* alleges is that Dr. Fatima first saw Castile on July 4, 2024, at which time she "diagnosed him with DVT with possible PE and recommended transfer to the emergency department". [22], ¶¶37-38. Although it also alleges that "the defendants waited a full day before [he] was transferred to ECMC" (id., ¶38), that group allegation is not specific as to Dr. Fatima, and "a party is not entitled to amend its complaint through statements made in motion papers". Wright v. Ernst & Young LLP, 152 F.3d 169, 178 (2d Cir. 1998).

Although the Amended Complaint alleges that "PrimeCare has been sued multiple times for deliberate indifference to its patients' medical needs" ([22], ¶45), "citations to lawsuits, even if they did involve comparable conduct, do not alone establish a custom or practice that is widespread and persistent, particularly if the lawsuits did not result in an adjudication of liability", and "are insufficient to satisfy Monell". County defendants' Memorandum of Law [27-2] at 10 (citing authorities).

The Amended Complaint further alleges that "[a]s described in the above cases and evidenced by the widespread deficiencies in the care [he] received, Defendants Niagara County and/or Defendant Sheriff Filicetti and/or PrimeCare had a custom of cutting corners, ignoring, dismissing and/or failing to properly respond to the needs of incarcerated/detained people presenting with serious medical conditions and of maintaining false and incomplete medical records"; that they acted "with deliberate indifference, failed to develop and implement policies, practices, and procedures so as to ensure that incarcerated people would receive adequate treatment for serious medical needs", and that they "with deliberate indifference, failed to ensure proper training, supervision, and discipline for PrimeCare employees so as to ensure that detained and/or incarcerated people would receive adequate treatment for serious medical needs". [22], ¶¶45-48. However, these conclusory allegations do not satisfy Iqbal's plausibility requirement. "[C]onclusory statements[ ] do not suffice." Iqbal, 556 U.S. at 678.

Castile argues that "[d]ismissing plaintiff's Monell claim against the Prime and County defendants before the discovery phase would be premature. As the Second Circuit explained, '[i]t is unlikely that a plaintiff would have information about the city's training programs or about the cause of the misconduct at the pleading stage, and therefore need only plead that the city's failure to train caused the constitutional violation'." Castile's Memorandum of Law [35] at 3, *quoting* Amnesty America v. Town of West Hartford, 361 F.3d 113, 130, n.. 10 (2d Cir. 2004).

However, Amnesty predates Iqbal, which made clear that a plaintiff whose "complaint is deficient under Rule 8 . . . is not entitled to discovery, cabined or otherwise". 556 U.S. at 686. Thus, "an interpretation of Amnesty that allows plaintiffs to plead only the bare elements of their cause of action simply cannot be squared with Iqbal." Simms v. The City of

New York, 2011 WL 4543051, at *2, n. 3 (E.D.N.Y. 2011), aff'd, 480 F. App''x 627 (2d Cir. 2012). *See also* Melendez v. Sirius XM Radio, Inc., 50 F.4th 294, 307 (2d Cir. 2022) "[a]s the Supreme Court has emphasized, a plaintiff must allege facts supporting a plausible claim *before* being entitled to discovery and cannot hide behind broad legal conclusions to satisfy the pleading requirements" (emphasis in original); Kochan v. Kowalski, 478 F. Supp. 3d 440, 449 (W.D.N.Y. 2020) ("[p]laintiff is not entitled to discovery . . . because he has not satisfied the threshold plausibility standard necessary to progress past the initial stage of the proceedings"); Scaturo v. Fanatics, Inc., 2026 WL 1415391, at *1 (S.D.N.Y. 2026) ("[t]he Federal Rules of Civil Procedure require Plaintiffs to state a claim upon which relief may be granted *without access to information that is solely in Defendants' sole control*") (emphasis in original).

## CONCLUSION

For these reasons, I recommend the motions to dismiss [27, 30] be denied as to defendants Giaccotto, Getz, Marriott and Gandt, but granted in all other respects. Unless otherwise ordered by District Judge Sinatra, any objections to this Report and Recommendation must be filed with the clerk of this court by September 11, 2026. Any requests for extension of this deadline must be made to Judge Sinatra. A party who "fails to object timely . . . waives any right to further judicial review of [this] decision". Wesolek v. Canadair Ltd., 838 F. 2d 55, 58 (2d Cir. 1988); Thomas v. Arn, 474 U.S. 140, 155 (1985).

Moreover, the district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance. Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co., 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) and (c) of this Court's Local Rules of Civil Procedure, written objections shall "specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection . . . supported by legal authority", and must include "a written statement either certifying that the objections do not raise new legal/factual arguments, or identifying the new arguments and explaining why they were not raised to the Magistrate Judge". Failure to comply with these provisions may result in the district judge's refusal to consider the objections.

Dated: August 28, 2026

/s/ Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge